**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GRANT'S FINANCIAL PUBLISHING INC., <br><br> Plaintiff, <br><br> v. <br><br> EATON VANCE CORP., EATON VANCE MANAGEMENT, and EATON VANCE TRUST COMPANY, <br><br> Defendants. | Case No. 06-cv-12031 -RCL |
| EATON VANCE MANAGEMENT, <br><br> Plaintiff, <br><br> v. <br><br> GRANT'S FINANCIAL PUBLISHING INC., <br><br> Defendant. | Case No. 06-cv-11987-RCL |

**GRANT'S OPPOSITION TO THE EATON VANCE MOTION TO DISMISS AND GRANT'S CROSS MOTION FOR AN ORDER CONSOLIDATING CASES AND PROVIDING CASE MANAGEMENT PROCEDURES**

Copyright infringement plaintiff Grant's Financial Publishing, Inc. ("Grant's") respectfully (i) opposes the motion to dismiss Case No. 06-cv-12031 filed by the three infringement defendants in that suit, Eaton Vance Corp., Eaton Vance Management, and Eaton Vance Trust Company (collectively "Eaton Vance Parties"), and (ii) cross moves for an order consolidating the pending copyright and software actions captioned above and providing that Grant's will function as plaintiff therein.  As Grant's demonstrates below:

- The Court has broad authority to consolidate actions with overlapping parties, establish the order of proof, and realign parties in the interests of judicial efficiency and fairness.

- Grant's should function as plaintiff since its copyright claims (i) are the source and mainspring of this action, (ii) were raised first and motivated development of the software claims, (iii) are the only claims that involve all parties, (iv) were first served and would have been first filed but for a preemptive strike made for the sake of priority in circumstances that, if rewarded, would discourage settlement and reward sharp practice.

- Where actions are before the same judge, orders of consolidation and case management make it unnecessary to resolve the sometimes thorny issues of counterclaim classification, and that is a particularly appropriate approach here since the motion to dismiss was filed in violation of Local Rule 7.1 and before Rule 13(a) had any application.

- In any event, the dismissal should be denied since (i) the copyright and software claims have no fundamental relationship sufficient to trigger Rule 13(a), and (ii) Eaton Vance Corp. and Eaton Vance Trust Company have not asserted software claims and, hence, have no standing under Rule 13(a) to seek dismissal of copyright claims against them.

**Certificate Under Local Rule 7.1**

The undersigned counsel for Grant's certifies that he met and conferred in good faith with counsel for the Eaton Vance Parties in an unsuccessful effort to narrow or resolve the issues presented by the cross motion herein.  On December 6, 2006, he emailed and left a voicemail with counsel for the Eaton Vance Parties, explaining the intended cross motion and asking to meet and confer.  On December 7 at 11:45 a.m., a telephone conference was held at which the cross motion was fully discussed.  Counsel agreed that the software and copyright claims should be presented in a single action, but could not agree on how that should occur or on which party should function as plaintiff.

**I.       THE FACTS**

Grant's is a small family-owned financial publishing firm whose business depends on $850 annual subscription fees for its twice-monthly publication, *Grant's Interest Rate Observer* ("*Observer*"). On April 26, 2006, Grant's wrote to Eaton Vance Corp., asking it to cease and desist from unauthorized copying and inviting Eaton Vance Corp. to investigate copying by its employees and pursue pre-suit settlement of the resulting copyright infringement liability (Exhibit A). Eaton Vance Corp. acknowledged copying and expressed interest in settlement (Exhibit B), but, after a series of back-and-forth letters, the negotiations stalled. [1]

On October 24, Grant's sent a draft complaint to Eaton Vance Corp., along with an offer of a settlement and, alternatively, a request that counsel agree to accept service after filing (Exhibit C). On October 30, counsel for Eaton Vance Corp. responded by email, saying a page was missing from the draft complaint and making no response to the open settlement offer (Exhibit D). Grant's immediately supplied the missing page and, believing the settlement process continued, deferred filing its complaint. (Had its offer been rejected, Grant's would have filed immediately.)

While Grant's was awaiting a response to its settlement offer, a subsidiary of Eaton Vance Corp. was preparing to attack. At 6:31 p.m. on the 27th—too late for Grant's to file suit the same day—counsel for Eaton Vance Corp. emailed to Grant's counsel (Exhibit E) a courtesy copy of a complaint that Eaton Vance Management, a subsidiary of Eaton Vance Corp., had just filed in this Court (Case No. 06-cv-11987) (the "Software Complaint"). That Software

---

[1]     Under Fed. R. Evid. 408, the acknowledgement of copying "is not admissible to prove liability for or invalidity of the claim or its amount," but the rule "does not require exclusion when the evidence is offered for another purpose."

Complaint asserted that Grant's had caused software to be installed on the computers of Eaton Vance Management that had the capability to disclose information about those computers and that had caused Eaton Vance Management to incur inspection expense in violation of federal and state laws never before mentioned to Grant's.[2]

The Software Complaint went out of its way to mention Grant's copyright infringement concerns. However, it pleaded no theory for which the core operative facts depended on copyright infringement by Eaton Vance Management or its employees, or the core operative facts constituting such infringement. Nor did it plead any theory on which the aggregate core of supporting facts gave rise to copyright infringement liability. Instead, although the Software Complaint sought to give them prominence, the references to copyright were peripheral and background, rather than core and operative.[3]

Grant's had intended to sue in New York where its offices are located. But rather than invite complicated venue disputes, Grant's promptly obtained Boston counsel, filed its Complaint before this Court, and served it (Case No. 06-cv-12031) (the "Copyright Complaint").

---

[2] For present purposes, the truth of those allegations is not at issue. Significantly, the Software Complaint concedes (¶ 17) that the accused software was "downloaded from Grant's website." At an appropriate time Grant's will establish that such downloads were knowing and intentional and the monitoring capability of the software was disclosed.

[3] The Memorandum In Support Of Defendant's Motion To Dismiss quotes (at 2-3) the allegations relied on to support the compulsory counterclaim theory. The <u>operative</u> facts alleged in paragraphs 13, 14, and 15 are installation of the software without effective consent. Paragraphs 16 and 17 allege that the software transmitted information from Eaton Vance computers without its knowledge or consent. It is not alleged that this information resulted primarily or at all from infringements, nor do the asserted claims rest upon the presence or absence of infringement. Paragraph 18 asserts that Grant's used the information to inaccurately assert infringement. Again, this allegation is not operative or core to the software claims. In short, the Sofware Complaint transparently seeks to emphasize a peripheral background issue to bolster a preemptive effort to establish priority.

At the time the Copyright Complaint was served, Eaton Vance Management had neither served the Software Complaint nor asked Grant's to accept service.

The Copyright Complaint named Eaton Vance Corp. as lead defendant, but also named Eaton Vance Management and Eaton Vance Trust Company, entities whose personnel Eaton Vance Management indicated had engaged in copying. The Copyright Complaint alleged that Grants owned registered copyrights in the *Observer,* employees of each of those entities had routinely and systematically copied the *Observer,* Grant's had not consented to that copying, and Grant's had provided sufficient copyright warnings and notice that the copying was willful. Notably, the Copyright Complaint made no mention of any monitoring software and asserted no theory that depends on the presence or absence of such software. Grant's expects to prove copying at trial through discovery from employees and records, not by software reports.

Because the Grant's Copyright Complaint was first served, the Eaton Vance Parties were obliged to respond first, on Monday, November 27. Mid-morning that day, counsel for the Eaton Vance parties left a brief voicemail for one of Grant's counsel stating that, to comply with the local rules requiring consultation, he was asking consent to dismiss Grant's copyright suit as a compulsory counterclaim under Rule 13(a). He said the motion was due and would be filed that afternoon. No effort was made to contact Grant's co-counsel, though they were known to Eaton Vance.

That afternoon, in working through messages that had accumulated over the preceding Thanksgiving week, Grant's counsel encountered the Eaton Vance voicemail. He promptly sent an email response (Exhibit F). His email agreed the parties should discuss seriously how the two actions should be coordinated. It noted, however, that the specified afternoon filing deadline did not leave time to evaluate and meaningfully discuss the newly disclosed compulsory

counterclaim theory. Recognizing the Eaton Vance Parties had waited until their response deadline to initiate consultation, Grant's counsel offered a brief extension to allow good faith consultation.

Counsel for the Eaton Vance Parties replied summarily by email that he expected Grant's counsel to be available when he called and that Grant's had been allowed ample time to confer (Exhibit F). The Eaton Vance Parties then filed a motion to dismiss that included a Local Rule 7.1 certificate that counsel had conferred on the motion by telephone and email.[4] It did not disclose the perfunctory nature of the communications, it did not reveal that the Eaton Vance Parties had declined the offer of Grant's counsel to engage in substantial discussions, and it conspicuously omitted the required statement that there had been a "good faith" effort to resolve or narrow issues.

Several days after the motion to dismiss, Grant's answered the Software Complaint. The Answer noted and disputed the motion to dismiss, but, hypothetically and in the alternative, adopted the Copyright Complaint as a counterclaim against Eaton Vance Management.

## II.  ARGUMENT

### A.  The Court Should Use Its Broad Authority To Consolidate The Pending Actions With Grant's As Plaintiff

Under Fed. R. Civ. P. 1, 16, and 42, Fed. R. Evid. 611, and its inherent powers, this Court has broad authority to structure litigation, realign parties, and set the order of proof.[5] If

---

[4] The certificate stated: "The undersigned attorney certifies that counsel for Eaton Vance, Jeffrey L. Snow, conferred by telephone and e-mail with Thomas Kirby, counsel for Grant's, on November 27, 2006, in an attempt to resolve or narrow the issues presented by this Motion; however, the parties were not able to resolve their dispute." *See* Def.'s Mot. to Dismiss at 2 (Doc. # 9).

[5]      See *Nelson v. United States,* 415 F.2d 483, 487 (5th Cir. 1969) ("the order of proof at trial is a matter almost wholly within the discretion of the trial court); (*Western Reserve Life Assurance Co. v. Bratton,* 2006 WL 1418804 (N.D. Ohio) (discussing authority that "decisions

everything else is equal, the party that filed the first action may function as plaintiff, but exceptions to such priority "are not rare and are made when justice or expediency requires." *Angela Adams Licensing LLC v. Dynamic Rugs, Inc.*, __ F. Supp. 2d ___, 2006 WL 3423774, *3 (D. Me. Nov. 28, 2006) *citing Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937-38 (Fed.Cir.1993).  Moreover, courts disfavor "priority" achieved by preemptive strategies that undermine the strong policy favoring full and open settlement efforts, and judicial discretion will be exercised to discourage, rather than to reward, such behavior.  *See Internet Transaction Solutions, Inc. v. Intel Corp.*, No. 06-cv-035, 2006 WL 1281654, *2 (S.D. Ohio May 8, 2006) (collecting and discussing authority that "factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping"); *Weber-Stephen Products Co. v. Gardena Norge A/S*, No. 03-c-5262, 2004 WL 422651, *2 (N.D. Ill. Feb. 12, 2004) (collecting authority that, to encourage settlement, courts should discourage preemptive strikes to establish priority); *The Holmes Group v. Hamilton Beach/Proctor Silex,* 249 F.Supp. 2d 12, 15-16 (D. Mass. 2002) (where notice of infringement leads to expectation of negotiations, preemptive filing not effective); *Massachusetts Eye & Ear Infirmary v. Eugene B. Casey Foundation*, 417 F. Supp. 192, 198 (D. Mass. 2006) (refusing to reward an effort that "bears the unmistakable mark of a party that has used that [declaratory] method as a tactical devise in a race to the courthouse"); *Champion Laboratories, Inc. v. Burch*, No. 06-CV-4031-JPG, 2006 WL 3370174, *2 (S.D. Ill. Nov. 21, 2006) (because of

---

as to the order of proof lie within the sound discretion of the district courts"); *North Central F.S. Inc. v. Brown,* 951 F.Supp. 1383, (N.D. Iowa) (realigning parties in the interests of justice); *FDIC v. Sweet Jan Joint Venture,* 809 F.Supp. 1253, (N.D. Tex. 1992) (ordering that defendant "should be permitted to present its evidence first and otherwise to participate at trial as if it were the plaintiff").

gamesmanship the first-filed damages action is denied priority and the second filed damages action is allowed to proceed).[6]

The standard for consolidation under Rule 42(a) is much broader than the standard for compulsory counter claims under Rule 13(a). The Court discretion over order of proof and similar matters is extremely broad.

In the present circumstances, (i) Grant's was the initiating party and the first to advance a claim, (ii) only Grant's Copyright Complaint involves all of the parties to the two actions, (iii) Grant's acted in full accord with the strong policy favoring settlement by giving notice, inviting discussion, and making a final offer, (iv) Eaton Vance Corp. and its subsidiaries unfairly undermined the settlement process, suing while a settlement offer was outstanding and after giving the impression that settlement remained open, (v) the Eaton Vance Management filing was a transparent tactical attempt to claim priority, and (vi) the difference in formal filing dates had no practical significance since Grant's filed within a few days and actually was the first to serve, and the first-filed action is by only one of the three Eaton Vance Parties sued by Grant's.

In these circumstances, the Court should exercise its broad discretion to consolidate the two actions and designate Grant's as the plaintiff. A proposed form of order is attached.

### B.     The Motion Of The Eaton Vance Parties To Dismiss The Copyright Complaint Should Be Dismissed

Where actions are pending before the same federal court, there is no need to wrestle with the sometimes thorny question of whether one should be classified as a compulsory counterclaim

---

[6]     "Race to the courthouse" issues often arise in declaratory judgment actions, a type of discretionary action whose "distinct features" allow a court to dismiss abusive efforts at priority. *Atlas Copco Const. Tools v. Allied Construction Prods., Inc.*, 307 F.Supp. 2d 228, 232 (D. Mass. 2004) (discussing authority). The Software Complaint is not a declaratory action and lacks that special vulnerability to dismissal. But the judicial goals of encouraging settlement and discouraging preemptive races to the courthouse do not depend on the type of action employed. See *Champion Laboratories*, 2006 WL at *2.

to the other. Instead, "they can be consolidated in whatever manner is most convenient for the purpose of trial." Wright, Miller & Kane, *Federal Practice & Procedure* § 1418 at 147; s*ee also Branch v. FDIC,* 825 F. Supp. 384, 401 (D. Mass. 1993) (because the "cases are now consolidated before this Court, dismissal . . . would not serve the purposes of Fed. R. Civ. P. 13(a) even if it were a compulsory counterclaim"); *Provident Life and Accident Ins. Co. v. United States,* 740 F. Supp. 492, 497 (D. Tenn. 1990) (dismissal denied where the "action has been transferred to this Court and consolidated").[7]

Two procedural concerns make it particularly appropriate for the Court to decline to decide the motion to dismiss. First, the motion to dismiss was filed without the prior good faith conference on how to narrow or resolve the issues mandated by Local Rule 7.1, and that violation was obscured by the artfully worded Rule 7.1 certificate. This Court has been clear that it demands "compliance with both the letter and spirit" of Rule 7.1, and that a "deliberate choice" not to comply may have serious consequences. *Converse, Inc. v. Reebok, Int'l, LTD,* 328 F.Supp.2d 166, 170 (D. Mass. 2004) (Lindsay, J.) Certainly the Court should not reach out unnecessarily to decide a motion that was presented in violation of the Rule and its policies.

Second, the motion was premature. Because the Copyright Complaint was first filed, the Eaton Vance Parties were required to respond first. As of the time they filed their Rule 13(a) motion to dismiss, Grant's was not yet obliged to respond and thus had no obligation under Rule

---

[7] Technically, Rule 13(a) does not forbid filing a separate action asserting compulsory counterclaims, nor does it mandate or even expressly authorize dismissal of such actions. *See Adam v. Jacobs,* 950 F.2d 89, 93 (2d Cir. 1991); *J. Lyons & Co., Ltd., v. Republic of Tea, Inc., Inc.,* 892 F.Supp. 486, 490 (S.D.N.Y. 1995). Sometimes dismissal may be the best response. But courts are free to draw upon all of their broad management powers, including "transfer, stay and consolidation to avoid multiple litigation and to effectuate the Rule." *Cyprus Corp. v. Whitman,* 93 F.R.D. 598, 604-05 (S.D.N.Y. 1982). Courts may exercise their equitable discretion to dismiss so as to prevent burdensome multiple actions, but that is just one possible remedy. Here, consolidation fully serves the policies of Rule 13(a).

13(a). Indeed, if Grant's had elected to pursue motions to dismiss the Software Complaint, it is possible that Rule 13(a) never would have come into play. *Lawhorn v. Atlantic Ref. Co.,* 299 F.2d 353, 357 (5th Cir. 1962) (where a party prevails on a motion to dismiss, Rule 13(a) does not apply). By filing prematurely, the Eaton Vance Parties sought to avoid pleading answers, defenses, and counterclaims that would have undermined their motion. The Court should not strain to decide a motion that was filed prematurely as well as without a proper Rule 7.1 conference.

In any event, the motion lacks merit. To begin with, Rule 13(a) applies only to "counterclaims" against an "opposing party" in the first-filed suit. The Copyright Complaint asserts infringement claims against Eaton Vance Corp. and Eaton Vance Trust Company for copying by their employees. Claims against those non-party entities are not compulsory counterclaims against to the Software Complaint on which only Eaton Vance Management is a plaintiff.[8]

As to Eaton Vance Management, the standards of Rule 13(a) are not met. The First Circuit recognizes four tests for identifying a compulsory counterclaim:

> 1) Are the issues of fact and law raised by the claim and the counterclaim largely the same?
>
> 2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
>
> 3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

---

[8] The "Eaton Vance" umbrella is used in a confusing way that makes it hard for an outsider to be sure which entity is responsible for which act. The Copyright Complaint sues each defendant in the alternative. Even if it should turn out that some of the entities are joint tortfeasors, they still could be sued in separate actions. *See Gorfinkle v. U.S. Airways, Inc.*, 431 F. 3d 19, 22 (1st Cir. 2005) (joint tortfeasors need not be joined in same action). Of course, consolidation is available to avoid inefficiency when multiple actions are filed.

>   4)  Is there any logical relationship between the claim and the counterclaim?

*Iglesias v. Mutual Life Ins. Co.,* 156 F.3d 237, 241 (1st Cir. 1998).

The motion to dismiss addresses only the logical relationship test, and with good reason: the first three tests obviously are not met here. Eaton Vance Management asserts that its background references to Grant's copyright concerns establish such a logical relationship. But the First Circuit has been clear that the logical relationship test is more demanding than that. A "logical relationship" exists only if "the same <u>aggregate of operative facts</u> serves as the <u>basis</u> of both claims" or "the <u>aggregate core of facts upon which the original claim rests</u> activates additional legal rights in a party defendant <u>that otherwise would remain dormant</u>." *Iglesias*, 156 F.3d at 242 (emphasis added).

Words like "aggregate" and "core" and "operative" have meaning. The First Circuit did not use them just for decoration but to separate Test (3) from Test (4). Test (3) is met if the evidence as a whole will be substantially similar for both claims. Test (4) permits peripheral and background facts to differ so long as the aggregate of central and essential facts are common. The situation here is the obverse of what Test (4) demands. A few incidental background facts may overlap, but the aggregate of core operative facts supporting each complaint are distinct.

The <u>aggregate core of operative facts</u> of the Software Complaint (assuming the legal theories arguendo) are that (i) Grant's caused Eaton Vance Management employees to place software on the computers of Eaton Vance Management; (ii) Grant's did not disclose or obtain consent for that software; (iii) the software could and did transmit information back to Grant's; and (iv) the software damaged Eaton Vance Management by causing it to analyze its system to see if the software had caused any damage.

On the other hand, the <u>aggregate operative facts</u> of the Copyright Complaint are that (1) Grant's owns and has registered copyrights in the *Observer*; (2) employees of the various Eaton Vance Parties have made copies of the *Observer*; (3) those copies were not authorized; and (4) by copyright notices and other warnings, Grant's gave sufficient notice of its copyrights that the copying was willful.  Eaton Vance management may claim that some of the information transmitted by the software was understood by Grant's to suggest unauthorized copying.  But that understanding is not operative (the Software Complaint does not turn other presence or absence of infringement.  Nor would this part of one element show that the <u>aggregate</u> of core facts is common.

Thus, the central and essential facts of the two claims do not substantially overlap.  It may be that, in attempting to prove its software claims, Eaton Vance Management would mention Grant's copyright concerns as background.  But the operative core of the facts essential to the two claims are distinct.  The references to copyright infringement in the Software Complaint are the type of tactical exaggeration of peripheral and background material that the First Circuit deems inadequate to make a counterclaim compulsory under Rule 13(a).[9]

---

[9]  Where the core operative facts are not common, a logical relationship is not established because the two claims arose from the same "chain of events."  *In re Supreme Beef Processors, Inc.,* 391 F.3d 629, 635 (5th Cir. 2004), *vacated on other grounds*, 468 F.3d 248, 253 n. 5 (5th Cir. 2006) (*en banc*) (agreeing with panel that counterclaims were not compulsory).

On the other hand, the <u>aggregate operative facts</u> of the Copyright Complaint are that (1) Grant's owns and has registered copyrights in the *Observer*; (2) employees of the various Eaton Vance Parties have made copies of the *Observer*; (3) those copies were not authorized; and (4) by copyright notices and other warnings, Grant's gave sufficient notice of its copyrights that the copying was willful.  Eaton Vance management may claim that some of the information transmitted by the software was understood by Grant's to suggest unauthorized copying.  But that understanding is not operative (the Software Complaint does not turn other presence or absence of infringement.  Nor would this part of one element show that the <u>aggregate</u> of core facts is common.

Thus, the central and essential facts of the two claims do not substantially overlap.  It may be that, in attempting to prove its software claims, Eaton Vance Management would mention Grant's copyright concerns as background.  But the operative core of the facts essential to the two claims are distinct.  The references to copyright infringement in the Software Complaint are the type of tactical exaggeration of peripheral and background material that the First Circuit deems inadequate to make a counterclaim compulsory under Rule 13(a).[9]

---

[9]  Where the core operative facts are not common, a logical relationship is not established because the two claims arose from the same "chain of events."  *In re Supreme Beef Processors, Inc.,* 391 F.3d 629, 635 (5th Cir. 2004), *vacated on other grounds*, 468 F.3d 248, 253 n. 5 (5th Cir. 2006) (*en banc*) (agreeing with panel that counterclaims were not compulsory).

**III.  CONCLUSION**

For the foregoing reasons, the two pending cases should be consolidated and Grant's should be designated to function as plaintiff with its copyright claims functioning as the complaint.  The motion to dismiss should be dismissed as moot – or on the merits if the Court chooses – thus leaving the Eaton Vance Parties to answer the Copyright Complaint.  For the Court's convenience, a proposed form of Order is attached hereto as Exhibit F.

        Respectfully submitted,

        By:   /s/   Thomas W. Kirby
            Thomas W. Kirby
            Mark B. Sweet
            WILEY REIN & FIELDING LLP
            1776 K Street, N.W.
            Washington, D.C.  20006
            (202) 719-7000

            David G. Hanrahan
            Richard D. Vetstein
            Gilman, McLaughlin & Hanrahan, LLP
            101 Merrimac Street, P.O. Box 9601
            Boston, MA  02114-9601
            (617) 227-9999

Dated:  December 11, 2006        *Attorneys for Grant's Financial Publishing Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of Grant's Financial Publishing Inc.'s Opposition to the Motion to Dismiss and supporting exhibits to be served December 8, 2006 via ECF distribution upon each of the following:

>Jeffrey L. Snow
>Kirkpatrick & Lockhart Nicholson Graham LLP
>State Street Financial Center
>One Lincoln Street
>Boston, MA 02110
>617-261-3100
>Fax: 617-261-3175
>Email: jsnow@kl.com
>
>Christopher Centurelli
>Kirkpatrick & Lockhart Nicholson Graham LLP - MA
>One Lincoln Street
>State Street Financial Center
>Boston, MA 02111
>US
>617-261-3100
>Fax: 617-261-3175
>Email: ccenturelli@klng.com

>   /s/   Thomas W. Kirby
>     Thomas W. Kirby